***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. Defendants have shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act at the time of the alleged injury. Defendant-employer employed *Page 2 
three or more employees, and an employee-employer relationship existed between plaintiff and defendant-employer.
2. Defendant-employer was insured by CNA Claims Plus at all times relevant to this claim.
3. Plaintiff's average weekly wage was to be agreed upon and stipulated to by the parties prior to the close of the record. The parties failed to provide such stipulation.
4. Plaintiff contends and defendants deny that plaintiff suffered a compensable injury by accident or specific traumatic incident on February 24, 2005.
5. The following documents were stipulated into evidence:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement;
 b. Stipulated Exhibit #2 — Plaintiff's relevant medical records; and
 c. Stipulated Exhibit #3 — Industrial Commission Forms and a recorded statement.
 *********** PROCEDURAL MATTER
Following the creation of the transcript in this matter, it came to the attention of the Full Commission that several medical records were inadvertently left out of the transcript of record. Specifically, the following documents were inadvertently left out of the transcript of record and are hereby deemed a part of Stipulated Exhibit #2: treatment records of Dr. Dunn dated June 3, 2004, Dr. Muther dated July 28, 2005, and Dr. Tellis dated February 23, 2006, March 23, 2006, May 18, 2006, and July 13, 2006, and the Functional Capacity Evaluation performed on August 9, 2005.
 *********** *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff began working for defendant-employer in October 2003 as a nurse in the acute dialysis unit. Prior to her employment with defendant-employer, plaintiff suffered an on-the-job injury to her lower back with her previous employer in 2002. Plaintiff was disabled for one month and received medical treatment from Dr. Angelo Tellis of Crystal Coast Pain Management.
2. Plaintiff continued to suffer from back problems after beginning her employment with defendant-employer. When plaintiff worked in the acute dialysis unit, other employees complained to Ms. Tina Hart, plaintiff's supervisor, that plaintiff did not want to set up machines or push the machines because of her back problems. Plaintiff missed four or five days of work due to back pain prior to February 24, 2005.
3. On October 22, 2004, plaintiff was transferred from the acute dialysis unit to the chronic unit facility. Plaintiff's transfer was the result of a patient care incident and was a demotion for which she received less pay. Plaintiff was disgruntled with the transfer and complained "to anybody that would listen."
4. Within a week or two prior to February 24, 2005, plaintiff requested time off from work, which was denied as plaintiff had just previously taken time off from work.
5. Plaintiff alleged that on February 24, 2005, she was helping a patient with dialysis when she was asked by two other convalescent transport employees to help move the patient from the dialysis recliner to the transport stretcher. When plaintiff helped to lift the patient, she alleged she felt a pull, but no pain, in her back. Plaintiff did not report the incident to anyone, *Page 4 
despite the fact that there were several employees, including her supervisor, near her at the time of the alleged incident. Later that day, after plaintiff left work, plaintiff testified that she developed a burning between her shoulder blades and her lower back began to spasm.
6 Plaintiff presented for work the following morning, February 25, 2005, and informed her supervisor, Ms. Hart, that her back hurt. Plaintiff did not inform Ms. Hart that her back pain was related to any incident that occurred at work.
7. On February 25, 2005, plaintiff went to Eastern Carolina Internal Medicine (ECIM) for evaluation. Plaintiff reported that she did not feel any sharp pain or discomfort in her back at the time of the alleged incident but began experiencing pain across her thoracic/shoulder blade area and across her lumbar spine later in the evening. Plaintiff was prescribed Flexeril and was restricted to light duty work.
8. Plaintiff returned to ECIM on March 2, 2005 and reported continuing spasm and pain across the low back as well as increased "pins and needles" feeling in her right arm. X-rays of the lumbar and cervical spine were essentially normal and plaintiff was referred for an orthopedic evaluation.
9. Plaintiff returned to ECIM on March 9, 2005 indicating that she had improved overall but continued to have a "pins and needles" feeling in her right arm. Plaintiff was without lumbar spasm or tenderness to palpation. Plaintiff was diagnosed with ongoing right arm radiculopathy, right sciatica and shoulder region pain. She was restricted to no lifting more than 10 pounds and no bending, twisting, or stooping through March 16, 2005.
10. On March 19, 2005, plaintiff presented to her family physician, Dr. Ernest Dunn, with complaints of back pain. On March 24, 2005, Dr. Dunn restricted plaintiff from working until March 29, 2005. *Page 5 
11. Plaintiff underwent an MRI of the lumbar spine on March 29, 2005 which showed mild facet hypertrophy at L4-5 and early dessication at L2-3. Aside from the early dessication, the results were interpreted as negative. In addition, a thoracic MRI was performed on that date which was limited due to plaintiff's movement, but it was noted that no obvious herniations were present. Similarly, a cervical MRI was essentially normal.
12. Plaintiff began a course of chiropractic therapy on April 11, 2005 and complained of headaches, cervical, thoracic, and lumbar back pain, right shoulder and arm pain and parathesia, right hip pain and right leg/toe parathesia all due to the alleged February 24, 2005 incident. Contrary to her testimony at hearing and as reported to ECIM, where she first sought medical treatment after the alleged injury, plaintiff reported to the chiropractor that she felt instant pain when she helped move the patient on February 24, 2005. Plaintiff's symptoms had also grown from those she originally reported to ECIM. Plaintiff continued chiropractic treatment until April 27, 2005 and thereafter failed to return for her next appointment.
13. Plaintiff presented to Dr. Ellis Muther on April 27, 2005 and reported continued back pain from sitting, standing, and walking. Plaintiff's medical history was significant for the previous back injury in 2002 for which she was disabled for one month and received treatment from Dr. Tellis. Dr. Muther diagnosed plaintiff with a muscular back disorder, restricted plaintiff from working for one month and prescribed physical therapy. On July 27, 2005, Dr. Muther continued plaintiff's out of work status for another two months.
14. A Functional Capacity Evaluation (FCE) was performed on August 9, 2005, the results of which indicated plaintiff was able to work in a sedentary capacity. Dr. Muther agreed with these restrictions on August 22, 2005. *Page 6 
15. On October 14, 2005, plaintiff presented to Dr. Angelo Tellis of Crystal Coast Pain Management, the same physician who treated her for her 2002 back injury. Dr. Tellis noted normal range of motion, no tenderness to palpation about the neck, some tenderness to palpation over the bilateral sacroiliac joints and mid thoracic spine, and negative straight leg raises.
16. Plaintiff underwent a bilateral sacroiliac joint injection on October 18, 2005 which she later reported provided no improvement. Dr. Tellis noted that he was unable to determine the etiology of plaintiff's low back pain.
17. Plaintiff continued to treat with Dr. Tellis through July 13, 2006 without a definitive diagnosis of the condition causing her symptoms.
18. On May 25, 2006, plaintiff presented to Dr. William Lestini for an independent medical evaluation. Plaintiff related that 100% of her pain was in the low back and bilateral buttock region but also complained of right radicular pain to the foot and right hand weakness. On examination, Dr. Lestini found that plaintiff was hypersensitive to deep and superficial palpation to the lumbar spine. Dr. Lestini reviewed the MRIs and concluded that there was no significant lesion, herniation, stenosis, or impingement at any level.
19. Dr. Lestini concluded that plaintiff had chronic pain syndrome in multiple areas along her spine which was difficult to correlate with her findings and, as such, could not assign a specific causality or diagnosis. Dr. Lestini encouraged plaintiff to wean herself off chronic narcotic medication, continue a home-based exercise program, and placed plaintiff at maximum medical improvement with no impairments or restrictions.
20. Dr. Tellis testified to a reasonable degree of medical certainty that the alleged February 24, 2005 incident caused the back problems for which he has been treating plaintiff. Dr. Tellis based this opinion on the fact that plaintiff had no back pain prior to the alleged *Page 7 
incident. When it was brought to Dr. Tellis' attention that plaintiff had previously sustained an injury to her back, for which he treated her, Dr. Tellis opined that he could not state with certainty that the alleged incident in February 2005 caused her current condition.
21. Plaintiff's testimony relating all her current back problems to the alleged February 24, 2005 work incident is not credible. Based upon the greater weight of the credible evidence, plaintiff has not shown that an event or incident occurred on February 24, 2005, which resulted in injury to her back.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of an in the course of employment. N.C. Gen. Stat. § 97-2(6). "With respect to back injuries, however, where injury to the back arises out of and in the course of employment and is the direct result of a specific traumatic incident of the work assigned, `injury by accident' shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident." N.C. Gen. Stat. §97-2(6). Plaintiff has the burden of proving that the injury complained of resulted from an injury by accident arising out of and in the course of the employment. Henry v. A.C. Lawrence Leather Co., 231 N.C. 477,57 S.E.2d 760 (1950). Plaintiff has failed to show through competent, credible evidence that she suffered a specific traumatic incident or injury by accident on February 24, 2005 which resulted in an injury to her back. *Page 8 
2. Assuming arguendo that plaintiff was able to prove through competent evidence that she sustained an injury by accident on February 24, 2005, plaintiff failed to carry the burden of proving by competent evidence that a causal relationship existed between the work-related accident and the disability for which compensation is sought. Click v.Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
This the 14th day of February 2008
S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ BUCK LATTIMORE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER *Page 1